UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

KEVIN CURTIN

 Plaintiff

v.

PEORIA SCHOOL DISTRICT NO. 150, an Illinois Local Governmental Entity, GRENITA LATHAN, Superintendent in Her Individual Capacity, DEB WOLFMEYER, President and now Board Member in Her Individual Capacity, LINDA BUTLER, then Vice President of the Board and now Board Member in Her Individual Capacity, RICK CLOYD, then Board Member and now Vice President in His Individual Capacity, CHRIS CRAWFORD, then Board Member and now President in His Individual Capacity, M. LYNNE COSTIC, Board Member in Her Individual Capacity, and LAURA PETELLE, Board Member in Her Individual Capacity,

 Defendants

12-1449

**JURY DEMAND**

## COMPLAINT

Now comes the Plaintiff, Kevin Curtin, by Richard L. Steagall, his attorney, and complaining of the Defendants, Peoria School District No. 150, an Illinois Local Governmental Entity, Grenita Lathan, Superintendent in Her Individual Capacity, Deb Wolfmeyer, President and now Board Member in Her Individual Capacity, Linda Butler, then Vice President of the Board and now Board Member in Her Individual Capacity, Rick Cloyd, then Board Member and now Vice President in His Individual

1

Capacity, Chris Crawford, then Board Member and now President in His Individual Capacity, M. Lynne Costic, Board Member in Her Individual Capacity, and Laura Petelle, Board Member in Her Individual Capacity, for a claim states:

## I.
## Jurisdiction & Venue

1. The court has jurisdiction to hear plaintiff's claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983, under 42 U.S.C. § 1343 (4). Supplemental jurisdiction to hear the state claims exists under 28 U.S.C. § 1367 (a).

2. Plaintiff is domiciled in Peoria County, Illinois, Defendant, Peoria School District 150 is a local governmental entity providing primary and secondary education in Peoria County, Grenita Lathan, Superintendent, and each of the individual board members are domiciled in Peoria County, Illinois, and the occurrences that are the subject of this action happened in Peoria County, Illinois. Venue exists under 28 U.S.C. § 1391 (b). The case is assigned to the Peoria Division of this court under Local Rule 40:1.

3. The occurrence complained of happened on **April 30, 2012** in the City of Peoria, County of Peoria, and State of Illinois

## II.
## The Parties

4. Plaintiff, Kevin Curtin, was a teacher upon graduation from college 1980 through 1987, a Principal at North Pekin Elementary School from 1987 to 1994, and a Principal in the Peoria School District 150 from August 1, 1994 to June 30, 2012. He was demoted to a tenured teacher and is assigned to teaching computer science for District

150 beginning on July 1, 2012.

5.      Defendant, Peoria School District No. 150, is a local governmental entity organized and existing under the laws of the State of Illinois with the capacity to sue and be sued providing primary and secondary education in Peoria County, Illinois and was acting under color of state law.

      A.    District 150 is sued for the conduct of its policy making agents set forth in Part III B under 42 U.S.C. § 1983.

      B.    District 150 is also sued as a necessary party defendant because of its obligation to pay any settlement or judgment of officers of employees of the local governmental entity under the Illinois Local Governmental Tort Immunity Act. 765 ILCS 10/9-102 (2010).

6.      At all times material here, Defendant, Grenita Lathan has been employed as Superintendent of Peoria School District No. 150 from July 1, 2010 and has been awarded an additional three year contract through 2016 acting in the scope of her employment as Principal under color of state law. She is sued in Her Individual Capacity.

7.      At all times material here, Defendant, Deb Wolfmeyer, was the President and now is a Board Member of School District No. 150 acting in the scope of her office under color of state law. She is sued in Her Individual Capacity

8.      At all times material here, Defendant, Linda Butler, was the Vice President and now is a Board Member of School District No. 150 acting in the scope of her office under color of state law. She is sued in Her Individual Capacity.

9.      At all times material here, Defendant, Rick Cloyd, was a Board Member

and now is a Board Member of School District No. 150 acting in the scope of his office under color of state law. He is sued in His Individual Capacity.

10.  At all times material here, Defendant, Chris Crawford, was a Board Member and now is a Board Member of School District No. 150 acting in the scope of his office under color of state law. He is sued in His Individual Capacity.

11.  At all times material here, Defendant, M. Lynne Costic, was a Board Member and now is President of School District No. 150 acting in the scope of his office under color of state law. She is sued in Her Individual Capacity.

12.  At all times material here, Defendant, Laura Petelle, was a Board Member of School District No. 150 acting in the scope of her office under color of state law. She is sued in Her Individual Capacity.

## III.
## The Incidents

**A.  Curtin's Performance as Principal and His Demotion to a Teaching Position**

13.  In 2005, Curtin had started the first Full Service Community Schools program outside the Chicago area in Illinois in the underprivileged economic area served by Garfield Primary School. Many of the Garfield students were from single parent families with others being raised by grandparents. Parents and the community had limited time and were not involved in the affairs of Garfield School as parents in more economically successful areas were.

14.  The Full Service Community School Plan obtained community

involvement by providing services to the community through the school rather than just the students. Among the organizations providing community services through Garfield School were Prairie State Legal Services – a legal aid organization – offered free legal advice once a month near the end of the school day.   Methodist Medical Center had in school health clinics which examined and treated students and their families. Community Garden was a habitat organization which was attempting to set up community gardens in the underprivileged schools of Garfield and Trewyn Elementary Schools to grow vegetables and set up farmer's markets.

15. The Program was a success by 2009-2010. The community involvement in Garfield School had significantly increased with improvement in student educational performance. In 2005, Garfield mobility rate for students moving was 69% and achievement was 32%. By 2009, the mobility rate was 35% and achievement was 52%. Curtin was a keynote speaker at the Illinois Federation for Community Schools Convention.

16. Garfield's enrollment and population was constant and had not declined. Superintendent Lathan and the School Board made the decision to close Garfield School at the end of the spring semester of 2011.

17. Curtin gave a motivational speech describing the success of the Full Service Community Plan at Garfield School in April, 2010 at a Symposium on Education Reform Bradley University in Peoria. The featured guest was Arne Duncan, Secretary of the Department of Education of the United States. Lathan, who was still employed at a

San Diego, California school district, but had been hired as the Superintendent of District 150 starting on July 1, 2010, attended the presentation at Bradley University.

18. Most of the students that had attended Garfield School were assigned to attend Trewyn School. The Principal of Trewyn School had been re-assigned leaving the Principal position at Trewyn School open.

19. The strong preference of the community and staff of the closed Garfield School and Trewyn School was that Curtin be transferred to Trewyn as Principal to continue Full Service Community School Plan at Trewyn. Lathan and the School Board did not assign Curtin to follow his Garfield students and continue the highly successful Full Service Community School Plan at Trewyn School. Instead, they assigned him to Irving School. Irving School was going to be closed on December, 2012 after the end of the first semester of the 2012-2013 school year and was in another underprivileged area where Curtin had no prior connection.

20. In the School Year 2011-2012, Curtin was a new Principal at Irving School who did not know the students and their families. Irving School was scheduled to be closed after the 2011-2012 School Year.

21. Curtin's students at Irving School with a new Principal and impending closing maintained test scores for the 2011-12 school that were the same for the previous 2010-11 school year.

22. The other objects of Superintendent Lathin's racial remarks, Steve Ptacek, Richwoods High School Principal left the employ of School District 150 to take a

Principal position at another School District. Joan Wojcikewych, the Principal of Washington Middle School, retired.

23. Michelle Ungrait was interviewed by Superintendent Lathan for an administrative position for Peoria School District No. 150 for three years. She was working at the time for the Guilford County, North Carolina School District, which is in the Metropolitan Greensboro, North Carolina area. Her husband, who was employed, in an educational position in the Greensboro, North Carolina area was also offered employment position with Peoria School District No. 150.

24. Ungrait and her spouse moved with their then six year old son to accept the positions with Peoria School District No. 150. She received a Contract on her third day of work and a job description after one month of work. Ungrait was assigned a management position in Central Office; she was eventually assigned special education, technology, testing and assessment, and student assignment.

25. Ungrait attended a back to school event downtown. Kevin Curtin was one of the three keynote speakers for the 2010-2011 School Year. His topic was education and motivation. Ungrait found Curtin to be a very committed principal with compassion and knowledge. She was very impressed with his talk.

26. Lathan began her employment as Superintendent of District 150 and had planned to have writings from the Principals of the individual schools on goals and then a conference with each of 30 Principals. Instead of receiving the Principal's written goals, Lathan had someone telephone the 30 Principals and instructed them to attend a

one hour group meeting between Lathan and the 30 Principals of Schools within District 150.

27. The 30 School Principals gathered for meeting with Superintendent Lathan on their goals in August, 2010. Lathan spent time with each of the 30 Principals along discussing their goals. Curtin was one of the better performing Principals in District 150 adjusting for the lower socio-economic levels of his students as was Steve Ptacek, Richwoods High School Principal, who had higher socio-economic levels of students, and Joan Wojcikewych, who was the Principal of Washington Middle School, the magnet school of gifted children of District 150. Lathan knew of the recognized success of Curtin's Full Service Community Plan from her attendance at the April, 2010 speech given by Curtin at Bradley University.

28. Lathan is a black female. Curtin and Ptacek are white males. Wojcikewych is a white female. Curtin, Ptacek, and Wojcikewych – adjusting for the varied socio-economic backgrounds of their students – were among the top performing Principals in District 150.

29. Lathan did not accept any of the goals identified by Curtin, Ptacek, and Wojcikewych. After the August, 2010 Goals Conference, Lathan began referring to each in racially derogatory terms in a mocking voice. Lathan continued to make such racially derogatory comments in mocking tones when they were mentioned in the Administration offices in the period from the August, 2010 Goals interviews through February, 2011.

30. Ungrait worked with Bryan Chumbley in the winter of 2011 on a project together to summarize the student-achievement data of all principals and how many years they were in the building. Kevin Curtin was one of the longest-serving principals, with one of the healthiest student-achievement data sets in Peoria School District 150. Curtin was one of the best principals in Peoria School District No. 150. Ungrait presented that finding to Superintendent Lathan.

31. Tim Delinski and Revonda Johnson were assigned to evaluate Principals during the 2010-2011 School Year. There was a deadline to complete evaluations to give the Principal the opportunity to remediate deficiencies in their performance, which Delinski and Johnson did not meet. The result was the School District could not terminate Principal's contracts in 2010-2011.

32. Lathan regularly used racially derogatory terms to mock Kevin Curtin, Steve Ptacek, and Joan Wojcikewych. Ungrait was Lathan's subordinate and had never witnessed such racially derogatory terms. Lathan's reference to these white persons were similar to the racial stereotypes used to describe blacks.

33. Ungrait arranged a meeting with then School Board President Deb Wolfmeyer, Vice President Linda Butler, and Bob Gates, the School Board attorney, which lasted two hours. She told them of Lathan's conduct. Butler told Ungrait at the end of the meeting that Ungrait had due process because she was able to talk to them.

34. At the next regularly scheduled Board meeting in March, 2011, the School Board voted unanimously to terminate Ungrait's contract, paying her a teacher's salary

through the end of the first year contract term.

35. Curtin was the only one of the three white persons who Lathan mocked in racial terms who remained employed by the School District for the 2011-2012 School Year.

36. The School Board held a private hearing and then an April 30, 2012 public hearing on Superintendent Lathan's recommendation. Curtin's attorney presented the transcript of the sworn statement of Michelle Ungrait testifying to racially derogatory terms used by the black female Lathan to mock Kevin Curtin, Steve Ptacek, and Joan Wojcikewych, the superior performance of these white Principals and the forced departure of Ptacek and retirement of Wojcikewych.

37. The April 30, 2012 public hearing was chaired by the Board attorney who on the objection of the School Board attorney to the offer of Ungrait's statement by Curton's attorney accepted it, but instructed the Board Members to give it little weight.

38. With full knowledge of the racially discriminatory remarks of Superintendent Lathan and adverse employment action against Ptacek and Wojcikewych, the School Board voted 6-1 to demote Curtin from his Principal's position to a teaching position. Board members Deb Wolfmeyer, Linda Butler, Rick Cloyd, Chris Crawford, M. Lynne Costic, and Laura Petelle voted in favor of the demotion and Martha Ross voted against Curtin's demotion.

39. The stated reasons of Curtin's deficiencies in performance of the School District attorney given as the reason for the demotion were false.

40. Virginia Coleman was a black female Principal who had also been recommended by Superintendent Lathan for demotion. The School Board agreed with Coleman that she would be transferred to an Assistant Principal position at a salary equal to or greater than she received at the Principal position.

**B.   Policy Making Agents**

41. The policy making agent of Peoria School District 150 for day to day management was Grenita Lathan, Superintendent with the overall policy supervision by the School Board.

42. Lathan made the decision to recommend the demotion of Curtin from Principal to teacher as a policy making agent of Peoria School District No. 150.

43. The six School Board Members who voted to demote Curtin from Principal to teacher, Deb Wolfmeyer, Linda Butler, Rick Cloyd, Chris Crawford, M. Lynne Costic, and Laura Petelle, did so as the policy making agents of Peoria School District 150 with full knowledge of Lathan's racially derogatory remarks about Kevin Curtin, Steve Ptacek, and Joan Wojcikewych and adverse employment action based on race against those Principals and by their vote ratified the racially discriminatory conduct of Superintendent Lathan.

## IV.
## Plaintiff's Claims

**A.   Constitutional Provisions and Statute Involved**

44. At all times material, there was in full force and effect in the United States of America, there was in full force and effect the following provisions of the

Constitution of the United States and Statutes of the United States.

### Amendment XIV. Equal Protection of Laws

... nor shall any State deprive any person of life, liberty, or property, without due process of law nor deny any person equal protection of the laws.

### Civil Rights Act of 1871, 42 U.S.C. § 1983

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, a citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileged or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress...

### B.     Federal Claim

45.    School Board Members, Deb Wolfmeyer, Linda Butler, Rick Cloyd, Chris Crawford, M. Lynne Costic, and Laura Petelle, with full knowledge of the racial motivation in Superintendent Lathan's decision to recommend the demotion of Curtin, a white male, from Principal to teacher and their own racial motivation in demoting Curtin from Principal to teacher while demoting Virginia Coleman, a black female from Principal to Assistant Principal at the same or increased pay she received in her former position as Principal in deprivation of Curtin's right to equal protection of the laws as specifically alleged in ¶ 37-40.

46.    The conduct of Lathan in recommending Curtin's demotion from Principal to teacher and the Board Members in voting to demote Curtin from Principal to teacher was motivated by Curtin's race in deprivation of his right to equal protection of the laws as specifically alleged in ¶13-36.

47.    Curtin has been deprived of his liberty and property interest in continued employment as a Principal at Peoria School District 150 without the equal protection of laws as specifically alleged in Part III A by Superintendent Lathan's decision to recommend that he be demoted from Principal to teacher which was motivated by his race and the individual Board Members' approval of that recommendation knowing it was motivated by race and giving Curtin less favorable treatment in the demotion than the similarly situated black female Virginia Coleman by the conduct of the policy making agents of Peoria School District 150 as specifically alleged in Part III B.

## V.
## Relief Requested

48.    As a direct and proximate result of the racial discrimination in deprivation of Curtin's right to equal protection of the laws, Curtin's Principal salary of $86,151 to a teacher's salary of $65,897, a loss of income of $20,254 effective July 1, 2012; Curtin will lose the total sum of $40,508 for the years 2012-2013 and 2013-2014 and the additional $162,032 in income for four additional years employment, a total loss of income $182,260 as set calculated in the attached Excel Spreadsheet computing Loss of Income that is Ex:1; further Curtin has in the past and will in the future endure pain and suffering and mental distress for which he has been presently evaluated by a physician who has prescribed medications.

49.    The conduct of Superintendent Lathan and Board Members Deb Wolfmeyer, Linda Butler, Rick Cloyd, Chris Crawford, M. Lynne Costic, and Laura Petelle is such that for the purposes of punishment and by way of example, Curtin is

entitled to an award of punitive damages to punish the defendants and deter others from the commission of like offenses in the future.

50. Curtin has and will incur attorney's fees and expenses in prosecuting this action for which he is entitled to an award as a prevailing plaintiff under 42 U.S.C. § 1988.

51. Curtin is entitled to an injunction against Peoria School District No. 150 reinstating him to his position as Principal at the salary provided for Principals of Curtin's education and experience  directing the Peoria School District 150 and its authorized agents refrain from retaliation or interference with Curtin's performance of the duties of Principal.

## VI.
## Prayer for Relief

**WHEREFORE,** Plaintiff, Kevin Curtin, prays for judgment in his favor and against the Defendants in the following particulars:

1. Compensatory damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000) jointly and severally against Defendants, Peoria School District No. 150, an Illinois Local Governmental Entity, Grenita Lathan, Superintendent in Her Individual Capacity,  Deb Wolfmeyer, President and now Board Member in Her Individual Capacity, Linda Butler, then Vice President of the Board and now Board Member in Her Individual Capacity, Rick Cloyd, then Board Member and now Vice President in His Individual Capacity, Chris Crawford, then Board Member and now President in His Individual Capacity, M. Lynne Costic, Board Member in Her Individual Capacity, and Laura Petelle, Board Member in Her Individual Capacity.

2. Punitive damages in the amount of FIFTY THOUSAND DOLLARS ($50,000) against Defendant, Grenita Lathan, Superintendent in Her Individual Capacity, and TWENTY FIVE THOUSAND ($25,000) against

       each of the Defendants, Deb Wolfmeyer, President and now Board Member in Her Individual Capacity, Linda Butler, then Vice President of the Board and now Board Member in Her Individual Capacity, Rick Cloyd, then Board Member and now Vice President in His Individual Capacity, Chris Crawford, then Board Member and now President in His Individual Capacity, M. Lynne Costic, Board Member in Her Individual Capacity, and Laura Petelle, Board Member in Her Individual Capacity.

3.    An injunction reinstating Plaintiff, Kevin Curtin, to his employment as Principal at the salary provided for Principals of Curtin's education and experience for Defendant, Peoria School District No. 150, an Illinois Local Governmental Entity, and directing the Defendant to refrain from retaliation or interference with Curtin's performance of his duties as Principal.

4.    An award of Plaintiff's attorney's fees and expenses incurred in prosecuting this action as a prevailing plaintiff as a part of costs under 42 U.S.C. § 1988.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                                       Respectfully submitted,

                                       s/ Richard L. Steagall
                                       RICHARD L. STEAGALL,
                                       Attorney for the Plaintiff

RICHARD L. STEAGALL
RYAN S. McCRACKEN
Nicoara & Steagall
416 Main Street, Suite 815
Commerce Building
Peoria, IL 61602
309-674-6085
Fax: 309-674-6032
nicsteag@mtco.com